IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Pearle Vision, Inc., | : | |
| | : | Case No. 1:08-CV-190 |
| Plaintiff, | : | |
| | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER DENYING MOTION TO |
| N.J. Eyes, Inc., et al. | : | DISMISS OR TRANSFER VENUE |
| | : | |
| Defendants. | : | |

This matter is before the Court on the Motion of Defendants Susan Bayles and N.J. Eyes,

Inc. to Dismiss or Transfer for Improper Venue or in the Alternative to Transfer the Case in the

Interest of Justice ("Motion to Dismiss or Transfer Venue") (doc. 16).  Defendants seek to have

this action dismissed or transferred to the United States District Court for the District of New

Jersey.  For the reasons that follow, the Court **DENIES** the Motion to Dismiss or Transfer

Venue.

I.       **BACKGROUND**

A.       **2001 Franchise Agreement**

Plaintiff Pearle Vision, Inc. ("PVI") maintains its corporate headquarters in Mason, Ohio.

(Madden Decl. ¶ 1.)  Defendant N.J. Eyes is a New Jersey corporation with its principal place of

business in New Jersey.  (Am. Compl. ¶ 2; Bayles Aff. ¶ 2.)  PVI alleges that Defendant Susan

Bayles is a citizen and resident of New Jersey.  (Am. Compl. ¶ 3.)

Defendants and PVI entered into a Franchise Agreement (also "F.A.") which has an

effective date of October 31, 2001. (F.A. Ex. B.)[1]  The Franchise Agreement identifies Bayles as the sole owner of N.J. Eyes, the franchisee.  Bayles signed the Franchise Agreement on behalf of N.J. Eyes.  (F.A.)  Bayles also signed a Personal Guaranty dated April 4, 2002 which is attached to and incorporated into the Franchise Agreement.  (F.A. Ex. E; Terrell Decl. ¶ 3.)  The 2001 Franchise Agreement renews a prior agreement, and Defendants submitted a renewal fee to PVI at its Mason, Ohio headquarters.  (Madden Dec. ¶ 5.)  Defendants operated their franchise store, PVI store #8094, at Laurelton Square S/C, 1930 Route 88, Bricktown, New Jersey 08723.  (Kane Dec. ¶ 3.)

The Franchise Agreement states that it is governed by the laws of the state of Ohio.  (F.A. ¶ 36.)  The Franchise Agreement describes PVI's "distinctive optical retail system," called the Pearle Vision System ("PVI System"), which includes "proprietary rights in certain valuable trade names, service marks, trademarks, logos, emblems and indicia of origin" called the PVI Marks.  (F.A. ¶ 1.)  The Franchise Agreement contains a non-compete covenant which prohibits the franchisee from engaging in an optical business within three miles of the location of the franchise for one year after the expiration or termination of the Agreement.  (F.A. ¶ 19(B).)  The Agreement also prohibits the franchisee from using the PVI System or Marks after the expiration or termination of the Agreement.  (F.A. ¶ 34(A).)  The Franchise Agreement has an expiration date of October 31, 2006.  (F.A. Ex. B.)

**B.**     **Non-Renewal and Termination of the Franchise Agreement**

In February 2006, in anticipation of the approaching expiration date of the Franchise

---

[1] The Franchise Agreement is attached as an exhibit to Plaintiff's Response Memorandum in Opposition at CM/ECF documents 19-2 and 19-3.

Agreement, PVI sent a letter to Defendants regarding renewal of the Agreement and enclosing a "Notice of Intent" form.  (Terrell Dec. ¶ 4.)  PVI sent this letter from its headquarters in Ohio. (Id.)  Shortly thereafter, Bayles executed the Notice of Intent form on behalf of N.J. Eyes indicating that Defendants intended to renew the Agreement and returned the form to PVI in Mason, Ohio.  (Id. ¶ 5 & Ex. 2.)  In May 2006, a PVI Accounts Receivables supervisor sent Bayles a letter from Mason, Ohio requesting that Defendants contact her to discuss an overdue account balance so that the overdue account would not interfere in the franchise renewal process. (Madden Dec. ¶ 7 & Ex. 2.)

In a letter dated November 7, 2006, PVI sent forms to Defendants to execute a renewed Franchise Agreement and requested a return of those forms, properly executed, within thirty days of receipt of the letter.  (Terrell Dec. ¶ 6 & Ex. 3.)  The renewal forms were sent from and were to be returned to PVI at its Mason, Ohio headquarters.  (Id.)  Defendants failed to timely execute the renewal forms.  (Terrell Dec. ¶ 8; Kane Dec. ¶ 12.)  On January 22, 2007, PVI sent from its Mason, Ohio headquarters a letter to Defendants entitled "Warning - Franchise Agreement Renewal."  The letter stated that Defendants had five business days to provide PVI with a signed Franchise Agreement and pay the $1,250 renewal fee or the 2001 Franchise Agreement would expire.  (Terrell Dec. ¶ 8 & Ex. 4; Kane Dec. ¶¶ 12-13.)

In July 2007, Defendants returned to PVI in Mason, Ohio a signed Franchise Agreement, but PVI contends that the form was improperly executed and that Defendants failed to pay the franchise renewal fee.  (Terrell Dec. ¶ 10.)  PVI asserts that it attempted from Mason, Ohio to engage in discussions with Defendants to resolve the renewal issues, but that it was unsuccessful. (Terrell Doc. ¶ 11; Kane Dec. ¶ 13.)  Accordingly, on October 17, 2007, PVI sent from its

Mason, Ohio headquarters to Defendants a Notice of Expiration of Franchise Agreement which stated that the 2001 Franchise Agreement would expire upon Defendants' receipt of the notice. (Terrell Dec. ¶ 12 & Ex. 5; Kane Dec. ¶ 14.)  PVI informed Defendants that upon the termination of the Franchise Agreement, and consistent with Paragraph 34 of that Agreement, Defendants were to cease using the PVI System or Marks and were to fulfill other obligations required upon termination of the franchise.  (Terrell Dec. ¶13 & Ex. 5; F.A. ¶ 34.)

PVI alleges that Defendants continued to operate their store, former PVI store #8094, as an optical store and continued to use various PVI Marks through at least June 3, 2008 in violation of the Franchise Agreement.  (Kane Aff. ¶¶ 15, 19.)  In May and June 2008, the PVI franchise business consultant observed Defendants operating an optical store called NJ Eyes Vision Center at the former PVI store #8094 location.  (Kane Aff. ¶ 20.)  The consultant observed Defendants "selling optical products, optical professional services, and other optical-related products that are the same or similar to products sold by them while the former PVI #8094 was an authorized PVI location."  (Kane Aff. ¶ 21.)

## C.    Miscellaneous Facts Relevant to Venue

PVI maintained its billing systems at its Mason, Ohio headquarters.  PVI operated a call center in Texas through which franchisee product orders were processed, but PVI maintained all information regarding product orders at the Mason headquarters.  (Vaughan Dec. ¶ 5-6.)[2]  PVI performed the billing and invoicing processes for its product orders from franchisees at the

---

[2] Bayles stated in her affidavit that her store had communicated product orders to PVI at the corporate distribution center in Dallas, Texas and that PVI shipped eyeglasses and lenses to her store from Dallas.  (Bayles Aff. ¶ 11.)  To the extent that her testimony is different or conflicting with PVI's testimony about the product ordering process, the Court does not find the difference to be material for purposes of the Motion to Dismiss or Transfer Venue.

Mason headquarters.  (Vaughan Dec. ¶ 7.)[3]  Finally, PVI maintained its franchise relationship files at its headquarters in Mason, Ohio.  (Terrell Aff. ¶ 17.)

During the course of PVI's franchise relationship with Defendants, PVI initiated communications with Defendants from the Mason headquarters.  (Terrell Dec. ¶ 18.)  PVI made decisions regarding the renewal process for the Defendants' franchise from its Mason headquarters.  (Terrell Dec. ¶ 19.)  The PVI Accounts Receivable supervisor states that she participated in and/or initiated at least nine phone calls with Bayles from January 3, 2007 through October 16, 2007 from the Mason headquarters.  (Madden Dec. ¶ 4.)  Additionally, the supervisor also sent various e-mails from the Mason headquarters to Bayles.  (Madden Dec. ¶ 4.)

Bayles does not refute that she had contact with PVI at its Mason, Ohio headquarters.  However, she asserts that the majority of her communications with PVI were through Charles Kane, PVI's franchise business consultant for the state of New Jersey.  (Bayles Aff. ¶ 6.)  Kane worked out of the state of Pennsylvania.  (Bayles Aff. ¶ 8.)  Bayles also asserts that her person-to-person meetings with PVI representatives occurred in the state of New Jersey.  (Bayles Aff. ¶ 9.)  She asserts that she executed all documents regarding her PVI franchise in New Jersey.  (Bayles ¶ 10.)  Finally, Bayles asserts that she does not own property in Ohio, does not have a business interest in Ohio, and has never been in Ohio.  (Bayles Aff. ¶¶ 14-15.)

**D.    Procedural History**

On March 19, 2008, PVI initiated this suit against Bayles and N.J. Eyes.  (Doc. 1.)  PVI alleges seven claims against Defendants in the Amended Complaint:

---

[3] Bayles states in her Affidavit that PVI automatically withdrew from Defendants' business banking account at a PNC Bank branch in New Jersey all amounts owing PVI for product purchases, prescription orders, and franchise fees.  (Bayles Aff. ¶ 12.)

(1) Lanham Act trademark and service mark infringement against N.J. Eyes;
(2) Lanham Act false designation of origin against N.J. Eyes;
(3) common law trademark and service mark infringement against N.J. Eyes;
(4) common law unfair competition against N.J. Eyes;
(5) breach of Franchise Agreement against N.J. Eyes;
(6) breach of Franchise Agreement against N.J. Eyes; and
(7) breach of Guaranty against Bayles.

(Doc. 15.)  PVI alleges in the trademark-based claims that Defendants' continued use of the PVI

Marks at the former PVI store #8094 deceives consumers and causes confusion as to the source

of the products and services provided at the store.  PVI alleges in the breach of contract claims

that Defendants have failed to perform their post-termination obligations, failed to cease use of

the PVI System and Marks, and failed to pay amounts owing to PVI under the Franchise

Agreement and Guaranty.

Defendants have not filed an Answer to the Amended Complaint.  Instead, Defendants

filed the pending Motion to Dismiss or Transfer Venue.  PVI opposed the motion.  PVI asserts

that venue is appropriate in this jurisdiction because a substantial part of the acts or omissions

giving rise to the claim occurred here.

## II.     STANDARDS OF LAW AND ANALYSIS

### A.     Standard of Law for Motions to Dismiss for Improper Venue

Rule 12(b)(3) of the Federal Rules of Civil Procedure provides that a party may assert by

motion the defense of improper venue.  The federal venue statute states in relevant part as

follows:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of
> citizenship may, except as otherwise provided by law, be brought only in (1) a
> judicial district where any defendant resides, if all defendants reside in the same
> State, (2) a judicial district in which a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of property that is the
> subject of the action is situated, or (3) a judicial district in which any defendant

may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

The issue in this case is whether venue is proper in this District on the grounds that a substantial part of the acts or omissions giving rise to its claims occurred in this District.  See 28 U.S.C. § 1391(b)(2).  Under § 1391(b)(2), venue is appropriate in "any forum with a substantial connection with the plaintiff's claim."  First of Mich. Corp. v. Bramlet, 141 F.3d 260, 263 (6th Cir. 1998) (applying identical language applicable to diversity cases); see also Sky Tech. Partners, LLC v. Midwest Research Inst., 125 F. Supp. 2d 286, 290 (S.D. Ohio 2000) (quoting same).  More than one venue may be appropriate and a court need not determine which venue has the most substantial connection to the claim.  See Bramlet, 141 F.3d at 263.  "Venue must be proper for each claim and as to each defendant in order for the court to retain the action."  Verbis v. Iowa Dept. of Human Servs., 18 F. Supp. 2d 770, 774 (W.D. Mich. 1998); see also Centerville ALF, Inc. v. Balanced Care Corp., 197 F. Supp. 2d 1039, 1046 (S.D. Ohio 20002) (stating that venue must be proper for each claim).  Dismissal for improper venue is appropriate when a plaintiff has not asserted that "any event, act, or omission" upon which its claims are based occurred in its chosen forum.  See e.g. Glendora v. Dolan, 70 F. App'x 350, 350-51 (6th Cir. 2003); Miles v. WTMX Radio, 15 F. App'x 213, 215 (6th Cir. 2001).

A district court has discretion to choose the appropriate procedure for deciding a motion to dismiss for improper venue.  See Centerville ALF, 197 F. Supp. 2d at 1046.  A district court may hold an evidentiary hearing, or alternatively, may determine a venue motion without a hearing on the basis of the pleadings and affidavits alone.  Id.  "If the plaintiff presents a prima facie case that venue is proper, after reading the pleadings and affidavits in the light most

favorable to the plaintiff, the defendant's motion will be denied." <u>Zimmer Enterprises, Inc. v. Atlandia Imports, Inc.</u>, 478 F. Supp. 2d 983, 986 (S.D. Ohio 2007). The Court need not consider allegations made by a defendant contrary to those presented by the plaintiff if the Court makes its determination upon the pleadings and affidavits without a hearing. <u>Centerville ALF</u>, 197 F. Supp. 2d at 1046. However, "[i]f the written submissions raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing." <u>Serras v. First Tennessee Bank Nat'l Ass'n</u>, 875 F.2d 1212, 1214 (6th Cir. 1989) (referring to the analogous procedure for personal jurisdiction determinations).

**B.     Analysis of Dismissal Motion**

Having set forth the applicable standards, the Court now will determine whether the Southern District of Ohio is an appropriate venue for the breach of contract and trademark infringement claims. The Court begins with the breach of contract claims. Courts analyzing the "substantial part" test under § 1391(b)(2) for breach of contract actions have considered such factors as where the contract was negotiated or executed, where performance under the contract was to take place, where the breach occurred, and where the effects of the breach were felt. <u>Parenteau v. Century Bank</u>, No. 2:07-CV-851, 2008 WL 281626, *3 (S.D. Ohio Jan. 31, 2008); <u>Cobasys, L.L.C v. FMP Resistance Welding Supply, Inc.</u>, No. 07-13736, 2008 WL 162588, *3 (E.D. Mich. Jan. 17, 2008); <u>Ramada Franchise Systems, Inc. v. Hanna Hotel Enters., LLC,</u> 147 F. Supp. 2d 840, 847 (N.D. Ohio 2001). Venue is appropriate for the breach of contract claims in this District applying these factors. Defendants submitted payment for the 2002 renewal of the Franchise Agreement to PVI in Mason, Ohio. PVI made all decisions regarding the 2006/2007 renewal process from its Mason, Ohio headquarters. Defendants communicated with

PVI regarding renewal at PVI's Mason, Ohio headquarters. For example, Defendants sent the Notice of Intent to renew to PVI in Mason. PVI and Bayles communicated back and forth via e-mail from Mason, Ohio and New Jersey, respectively, regarding the payment of past due account receivables Defendants owed to PVI. PVI experienced in Ohio the injury from Defendants' alleged breaches. In sum, the Court finds that a substantial part of the acts and omissions giving rise to PVI's contract claims took place in the Southern District of Ohio.[4]

Analysis of the trademark claims is more complicated. PVI alleges that N.J. Eyes violated Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), respectively. Section 32 of the Lanham Act prohibits the use in commerce of a reproduction or copy of a registered mark while such use is likely to cause confusion, mistake, or deception. See 15 U.S.C. § 1114. Section 43(a) of the Lanham Act prohibits the use in commerce of a false designation of origin which is likely to cause confusion, mistake, or deception. See 15 U.S.C. § 1125(a). PVI also alleges that Defendants are liable for trademark infringement and unfair competition under the common law.

The Lanham Act does not contain a special venue provision; therefore, the general federal venue statute applies. Sanderson v. Spectum Labs, Inc., No. 00-1872, 2000 WL 1909678, at *4 (7th Cir. Dec. 29, 2000); Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995). Venue is proper in Lanham Act cases "where the infringing activity occurred." Nine Pt. Mesa of Nashville, Inc. v. Nine Pt. Mesa of Lexington, Inc., 769 F. Supp. 259, 261 (M.D. Tenn. 1991).

---

[4] Venue would be proper in the District of New Jersey as well. Bayles executed all franchise documents in New Jersey. She made payments owing to PVI from a bank branch located in New Jersey. Defendants were to perform their primary obligations under the Franchise Agreement in New Jersey. Defendants' activities which allegedly breached the Franchise Agreement and the Guaranty occurred in New Jersey.

Stated differently, venue is proper where the passing off occurred. Woodke, 70 F.3d at 985. "[C]onfusion about the origin of [trademark owner's] product [is] likely to occur" where the infringing activity took place. Antioch Co. v. Pioneer Photo Albums, Inc., No. C-3-99-270, 2000 WL 988249, *6 (S.D. Ohio Mar. 13, 2000); see also IA, Inc. v. Thermacell Techs., Inc., 983 F. Supp. 697, 700 (E.D. Mich. 1997).

Applying these standards, venue is proper in the District of New Jersey. Former PVI store #8094 is located in New Jersey. Defendants committed the infringing conduct, if any, at the New Jersey store. Confusion which might result from Defendants' conduct likely would occur in New Jersey. Not surprisingly, PVI does not dispute that venue would be proper in the District of New Jersey. The issue is whether venue is appropriate in this District as well.

PVI argues that venue is appropriate here, in part, because PVI suffered injury in this District from N.J. Eyes' infringing conduct in New Jersey. PVI cites Bird v. Parsons, 289 F.3d 865 (6th Cir. 2002), for the proposition that "a plaintiff whose trademark has been violated potentially suffers economic harm as a result of the defendant's actions, [and] the injury occurs both in places where the plaintiff does business and in the state where its primary office is located." Id. at 876. The issue in Bird, however, was whether the defendants were subject to personal jurisdiction in Ohio, id., not whether venue was appropriate in Ohio. The Bird precedent is persuasive, but not binding, authority.

At least one Circuit Court of Appeals has rejected PVI's argument. In Woodke, the Eighth Circuit a rejected plaintiff's argument that venue was proper where he resided because that is where he felt the ultimate effects of the infringing conduct. 70 F.3d at 985. "[W]hile damages or potential adverse economic effect are a necessary part of a Lanham Act claim, if

Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly." Id.

The facts in Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291 (3 d Cir. 1994), are analogous to those here. Cottman involved a franchisor's suit against a franchisee. The franchisor was a citizen of Pennsylvania and the franchisee was a citizen and resident of Michigan. 36 F.3d at 292. The franchisor had argued that venue was proper for breach of contract and Lanham Act claims in the Eastern District of Pennsylvania because the franchisee was obligated to pay its license fee to the franchisor in Pennsylvia, the franchisee was obligated to return advertising items to the franchisor in Pennsylvania, and the franchisor prepared yellow page advertisements for the franchisee in Pennsylvania and had them placed in Michigan telephone directories. Id. at 295. The court disagreed, implicitly determining that the events listed by the franchisor were insignificant to the pending claims. Id. The court also stated that venue for the Lanham Act claim was proper "where the unauthorized passing off [took] place" and found that the "alleged infringement occurred solely within the Eastern District of Michigan." Id. at 295-96. The court held that the district court should have transferred the case to the Eastern District of Michigan. Id. at 296.

Other courts have not universally adopted the reasoning of Cottman. In two recent district courts cases, the underlying contractual relationship between the parties impacted the courts' analysis of the proper venue for trademark infringement claims. The case of Sea Tow Services, International, Inc. v. Pontin, 472 F. Supp. 2d 349, 355 (E.D. N.Y. 2007), also has facts analogous to those here. The plaintiff, a New York nautical services corporation, alleged Lanham Act and common law trademark violations against its former licensee and the licensee's

owner, who operated their business in Florida.  Id. at 354-56.  The plaintiff licensor had

terminated the license agreement in June 2006 and sought to enforce language in that agreement

prohibiting the licensee from further use of the plaintiff's marks and trade dress.  Id. at 355.  The

plaintiff alleged in its complaint filed in the Eastern District of New York that defendants

continued to use the marks and trade dress in violation of the Lanham Act and in breach of

contract.  Id.  The court found that venue for the contract claim was proper in the Eastern District

of New York because the plaintiff negotiated the license agreement from New York (though

defendants negotiated from Florida) and because the defendants were obligated to perform in

New York to the extent that they were required to mail payments to New York.  Id.  As to the

Lanham Act claim, the court found that the acts giving rise to the trademark claim included the

formation of the license agreement and the issuance of a notice of termination of the agreement,

both of which occurred at least in part in New York.  Id.

Importantly, the Sea Tow Services court distinguished a suit between a licensor and

former licensee from an infringement suit brought against a non-licensee third party.  Id. at 365

n.8.  The court stated that infringement claims against former licensees involve not only the

infringing conduct itself, but also "the underlying contractual relationship between the parties

and the termination of that relationship."  Id.  Finally, the court stated in dicta that it would have

exercised pendent jurisdiction over the trademark claim based on the fact that the venue did lie in

the Eastern District of New York for the principal cause of action, the breach of contract claim.

Id. at 366 n.9.  The court explained its reasoning as follows:

> In this case, the contract claims are the "principal" causes of action-they concern
> the formation and alleged breach of the Agreement that gives rise to all of
> plaintiff's claims. The trademark claims arise from the same "common nucleus of
> operative facts" as the contract claims: both sets of claims concern the parties'

formation and termination of the Agreement, as well as defendants'
post-termination conduct, including their use of Sea Tow marks and trade dress.
Moreover, the exercise of pendent venue would avoid piecemeal litigation and
would not impose an unfair burden on defendants, as they would already be
litigating the properly venued contract claims in this District.

Id.

A different district court permitted a California franchisor to bring its claims for breach

of contract and Lanham Act violations in California against a Wisconsin franchisee even though

the franchisee had not been to California in ten years, did not own property in California, and did

not conduct business in California. California Closet Co., Inc. v. Ebben, No. C 08-0625, 2008

WL 1766767, *2 (N.D. Cal. Apr. 15, 2008). The franchisor alleged that the franchisee was

operating a second business in Wisconsin which used the franchisor's marks in addition to its

approved franchise. Id. "[A]ll of plaintiff's claims arise out of the franchise agreement or the

franchise relationship, which, as discussed above, have significant contacts with California in the

Northern District where plaintiff's principal place of business is located." Id. at *7.

This Court adopts the reasoning of these recent cases. The trademark infringement, false

designation of origin, and unfair competition claims should not be analyzed in a vacuum. They

arise from the same series of transactions and occurrences as the breach of contract claims.

Defendants' use of the PVI System and Marks began pursuant to a contractual relationship.

Their continued use of the PVI System and Marks became actionable under the trademark laws,

if at all, because of the termination of the contractual relationship. "In determining whether

events or omissions are sufficiently substantial to support venue . . . , a court should not focus

only on those matters that are in dispute or that directly led to the filing of the action . . . [but

r]ather, it should review the entire sequence of events underlying the claim." Mitrano v. Hawes,

377 F.3d 402, 405 (4th Cir. 2004) (internal quotations and citations omitted); see also Parenteau,

2008 WL 281626, at *2 (citing Mitrano favorably). A substantial portion of the entire sequence

of events giving rise to the trademark claims arose in this District. Defendants paid the franchise

fee to PVI in this District in 2002 to renew the franchise relationship. Defendants sent

correspondence regarding renewal of the Franchise Agreement in 2006 and 2007, including the

Notice of Intent form, to PVI in this District. Defendants allegedly failed to properly renew the

Agreement by failing to return executed documents and failing to pay the franchise renewal fee

to PVI in this District. PVI made in this District all decisions regarding the renewal of

Defendants' franchise. Defendants' alleged use of the PVI System and Marks beyond expiration

of the Franchise Agreement and failure to pay past due accounts caused damage to PVI in this

District. Accordingly, the Court holds that venue is proper in the Southern District of Ohio for

all of PVI's claims.

**C.      Transfer to a More Convenient Venue**

Defendants alternatively move pursuant to 28 U.S.C. § 1404(a) for transfer to the District

of New Jersey on the grounds that it is the more convenient venue. The transfer statute provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought." 28

U.S.C. § 1404(a). According to the notes following § 1404, subsection (a) "was drafted in

accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient

forum, even though the venue is proper." Id. note. "Section 1404(a) provides for transfer to a

more convenient forum, not to a forum likely to prove equally convenient or inconvenient." Van

Dusen v. Barrack, 376 U.S. 612, 645-46 (1964).

The moving party bears the burden of proving why a court should grant a transfer. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995); Kay v. National City Mortg. Co., 494 F. Supp. 2d 845, 849-50 (S.D. Ohio 2007). The threshold issue in a § 1404(a) is whether the action could have been brought in the transferee district. Shanehchian v. Macy's, Inc., 251 F.R.D. 287, 289 (S.D. Ohio 2008). Courts then consider multiple factors in adjudicating a § 1404(a) motion including "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" Moore v. Rohm & Haas Co. 446 F.3d 643, 647 n.1 (6th Cir. 2006) (quoting Moses v. Bus. Card Exp., Inc., 929 F.2d 1131, 1137 (6th Cir. 1991)).

The Court concluded in the analysis above that this action could have been filed in the District of New Jersey. Accordingly, the Court must determine whether the District of New Jersey is a more convenient forum. Defendants list multiple factors which they contend weigh in favor of transfer. First, they contend that New Jersey is a more convenient forum for the majority of witnesses, including the witnesses who will provide the most material testimony. Specifically, Defendants assert that all of their witnesses live in New Jersey. (Bayles Aff. ¶ 7.) However, Defendants have not identified their witnesses nor have they offered any evidence that their witnesses would be unable or unwilling to provide testimony at a trial in this District. See Armco, Inc. v. Reliance Nat. Ins. Co., No. C-1-96-1149, 1997 WL 311474, *5 (S.D. Ohio May 30, 1997) (stating that evidence is required to support transfer motion on this basis); AMF, Inc. v. Computer Automation, Inc., 532 F. Supp. 1335, 1341 (S.D. Ohio 1982) (same). Also, PVI has identified by name five witnesses located in Mason, Ohio who would testify at trial. A transfer

of venue should not result in the exchange of inconvenience from one party to another.  Kelly Services v. Eidnes, 530 F. Supp. 2d 940, 949 (E.D.  Mich. 2008).  The convenience for the parties and witnesses factors do not weigh in favor of transfer.

Defendants next argue that the action should be transferred because the majority of events giving rise to PVI's claims arose in the District of New Jersey.  Defendants contend that the interests of justice favor transfer and that PVI's choice of venue is given little weight in such circumstances.  Ordinarily, a plaintiff's choice of forum should be given weight in the analysis, but it is not a determinative factor.  Lewis v. ACB Business Servs., Inc., 135 F.3d 389, 413 (6th Cir. 1998).  Defendants cite to Mead Corp. v. Oscar J. Boldt Construction Co., 508 F. Supp. 193, 198 (S.D. Ohio 1981), for the proposition that the plaintiff's choice of forum has minimal value when the cause of action has little connection to the chosen forum.  The court in Mead Corp. actually stated that a plaintiff's choice of forum has "minimal value where *none of the conduct complained of* occurred in the plaintiff's forum."  Id. at 198 (emphasis added).  This Court already has concluded that a substantial part of the events and omissions giving rise to PVI's claims occurred in this District.  Even if a more substantial part of the events and omissions might have occurred in the District of New Jersey, this is not a dispositive factor here when examined in the totality of circumstances.

Defendants concede that the public interest factor of the respective courts' familiarity with the applicable law does not weigh in favor of transfer.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981) (identifying factor).  Both this Court and the District of New Jersey are able to determine Lanham Act claims and this Court likely has more familiarity with the Ohio common law claims.  Likewise, Defendants have presented no argument or evidence that the

parties would have a more expeditious adjudication of their claims in the District of New Jersey.

See Kay, 494 F. Supp. 2d at 856 (identifying docket congestion as a factor). In sum, Defendants have not met their burden of establishing that the District of New Jersey is a more convenient forum than this District. Accordingly, the Court will not transfer this action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

**III.     CONCLUSION**

For the foregoing reasons, the Motion to Dismiss or Transfer Venue (doc. 16) is

**DENIED**.

IT IS SO ORDERED.


                              _____s/Susan J. Dlott_____
                              Chief Judge Susan J. Dlott
                              United States District Court